HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIE BALLOU, | CASE NO. C19-5002RBL |
| Plaintiff, | ORDER |
| v. | |
| JAMES MCELVAIN, et al., | |
| Defendants. | |

THIS MATTER is before the Court on Defendant McElvain's Motion for Summary Judgment [Dkt. # 37] and Defendant City of Vancouver's Motion for Summary Judgment [Dkt. # 46]. This is an employment discrimination and retaliation case.

Plaintiff Ballou has been a Vancouver police officer since 2005. McElvain is the Chief of the Vancouver Police Department, and the individual primarily responsible for selecting officers for promotion, consistent with Washington's civil service rules. Ballou's core claim is that McElvain repeatedly passed her over for promotion to sergeant, because of her gender. Ballou was third on VPD's police sergeant eligibility list in November 2017 and the two male officers above her on the list were promoted; one in December 2017 and one in February 2018. Since then she has been the number one candidate. Ballou claims that another sergeant position came

ORDER - 1

open in June 2018, and rather than promote her, McElvain commenced or participated in retaliatory Internal Affairs investigations against her—over relatively minor (and in some cases, bygone) matters. She claims she had not previously been the subject of such investigations, and that the scope of them was beyond the VPD's standard policy and practice.

She complained internally and to the EEOC, filed a tort claim, and ultimately sued in this Court. She initially asserted a Fourteenth Amendment Equal Protection claim against McElvain and Vancouver, and Washington Law Against Discrimination claims for sex discrimination and retaliation against Vancouver. She has since amended her complaint (based partly on subsequent promotions of others below her on the list.) [Dkt. # 21]. She added a First Amendment claim against McElvain and Vancouver for retaliating against her for exercising her right to petition the government, (partly by filing this lawsuit) and 42 U.S.C. §2000e (Title VII) sex discrimination and retaliation claims against Vancouver.

McElvain seeks summary judgment on Ballou's § 1983 constitutional claims against him. He argues that Ballou has no evidence that males in indistinguishable circumstances were treated better, and that McElvain did not personally commence the allegedly retaliatory investigations. He claims he was responsible for prior, favorable employment decisions regarding Ballou, and that even under the familiar *McDonnell-Douglas* burden shifting framework, Ballou cannot as a matter of law show that McElvain's proffered reason(s) for failing to promote her was pretextual. McElvain also seeks summary dismissal of Ballou's § 1983 First Amendment claim, arguing that she cannot prove causation and that the lawsuit is not one of public concern as a matter of law. He also argues that even if some of her claims survive, Ballou is not entitled to punitive damages, and her claim for them should be dismissed.

Vancouver argues that Ballou has not and cannot make out a constitutional violation, much less one attributable to Vancouver under *Monell*. It claims her Title VII claims (disparate treatment, hostile work environment, and retaliation) claims fail as a matter of law; she cannot establish a prima facie case of discrimination, and even if she could, Vancouver has legitimate non-discriminatory reasons for the promotion decisions and the investigations. It too argues that it is entitled to the "same actor" inference; namely that McElvain allowed Ballou to participate in and pass the Sergeant Mentoring Program and permitted her to serve as an Acting sergeant, with an increase in responsibility and pay; demonstrating his lack of gender bias. It claims that being investigated without discipline (as Ballou was) is not an adverse employment action supporting a retaliation or hostile work environment claim, as a matter of law. It argues that the WLAD tracks the federal law and that those claims fail for the same reasons.

## I. DISCUSSION.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

**A. Ballou's § 1983 claims against McElvain.**

McElvain argues that Ballou's Equal Protection claim against him fails as a matter of law. He emphasizes her burden to demonstrate directly or through circumstantial evidence that he acted with an intent or purpose to discriminate based on her membership in a protected class (female) and argues that she cannot point to any individual he treated better who was "indistinguishable" from her in "all relevant respects." His motion is based on the claim that those who were promoted were different in more ways than just their gender. He points to the inherently, intensely factual circumstances surrounding her misconduct (failing to write reports) and the pre-promotion (mis)conduct of other, male candidates who were promoted. He argues that to meet her burden, Ballou must show that someone else was similarly (1) eligible to be promoted to sergeant, (2) had a recent sustained finding of misconduct coupled with inconsistent explanations for the behavior, but (3) was still promoted anyway. [Dkt. # 37 at 18]. McElvain argues that the some of Ballou's comparators were promoted to lesser positions (corporal, rather than

sergeant) and their conduct (one accidentally discharged his weapon; another got a DUI) is not identical to Ballou's.

Ballou points out that the reasons McElvain gave to not promoting her—"it was a maturity thing;" and "she doesn't accept responsibility"—are not concrete; they are subjective, potentially stereotypical, wiggle words. Indeed, the latter claim is seemingly undercut by the first line in McElvain's Motion: "Ballou wrote that she was 'embarrassed' for her misconduct after an IA investigation revealed she violated department policy by failing to write a report on at least five separate crimes[.]" [Dkt. # 37 at 1]. Pointing out that she admitted she did not follow policy is not support for the claim that she refused to take responsibility.

The Court analyzes disparate treatment claims of employment discrimination under the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v, Green*, 411 U.S. 792 (1973). *See Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1093 (9th Cir. 2005). The plaintiff bears the burden of production. *See id*. at 1094. To establish a prima facie case of discrimination, the plaintiff must show (1) she belongs to a protected class; (2) she was qualified for the position she sought; (3) her employer denied her that position, (4) giving it to someone outside the protected class. *See id*. (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). The requisite degree of proof at this stage is minimal. *See id*., citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). The burden then shifts to the employer, who must present sufficient evidence for a factfinder to conclude that it had a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets that burden, the plaintiff bears the burden of persuading the factfinder that the employer intentionally discriminated against her. *See id*.

A plaintiff may meet her burden of showing pretext using either direct or circumstantial evidence. *See id*. at 1094–95. If she relies on circumstantial evidence, it must be specific and

substantial to defeat the employer's motion for summary judgment. *See id*. at 1095 (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

Ballou has made her prima facie case for purposes of this motion. To be sure, the allegedly better-treated males Ballou cites were not "identical" to her; one may drill down far enough and distinguish anyone as a unique individual. But whether they were indistinguishable in terms of how their prior conduct and record played into their promotion is a question of fact. McElvain promoted others from the eligibility list who did not have perfect records, and the relevance of the different blemishes—the circumstances of Ballou's conduct, and theirs—is fundamentally a question of fact. Once the Court begins to evaluate whether one who shoots himself in the foot is more deserving of a promotion than one who fails to write a report, it is invading the jury's province. The fact that the investigations occurred and what they determined may be relevant evidence, but they are not dispositive on Ballou's constitutional claims.

McElvain next claims that his real reasons for not promoting Ballou were legitimate and non-discriminatory:[1] He claims Ballou "failed a basic function of policing (failed to write reports), gave conflicting explanations for her actions, and was soon under investigation allegations of identical misconduct." He claims that Ballou thus has a heightened obligation to demonstrate that these reasons are pretextual.

Ballou demonstrates that the IA investigations were close in time to (1) her rising on the eligibility list and (2) raising concerns that she was being discriminated against based on her gender. She has additional evidence that she was passed over again after she filed this lawsuit. McElvain has testified that he thought Ballou's complaining was itself retaliation against *him*.

---

[1] McElvain correctly points out that the Title VII, *McDonnell-Douglas* burden-shifting framework can be useful in analyzing a § 1983 Equal Protection employment claim.

McElvain's claim that he did not initiate the investigations that effectively precluded him from promoting Ballou is ineffective in this summary judgment context. There is ample evidence that he knew about the investigations, participated in them, and kept daily tabs on them. There were 8 such investigations[2] commenced against Ballou in the 15 months following Ballou's rise to the top of the eligibility list; five after her sex discrimination complaint. One was based on an anonymous tip about an article concerning this lawsuit, and which Ballou seems to demonstrate was baseless.

The "same actor" inference is not a strong one on the facts of this case. McElvain let Ballou into the mentor program, but he did not hire her and did not promote her. The fact McElvain let her serve as an Acting Sergeant is evidence in his favor, but it is not summary judgment proof that he did not deny Ballou's promotion because she was female.

It may well be that a jury will examine these events, investigations, motivations, complaints and explanations and agree that McElvain chose not to promote Ballou for valid and non-discriminatory reasons. But the evidence raises numerous questions of fact precluding summary judgment. McElvain's Motion for Summary Judgment on Ballou's Equal Protection discrimination claim is **DENIED**.

McElvain also argues the absence of pretext is fatal to Ballou's retaliation claim, even if it were brought under Title VII (a claim that Ballou has not asserted against McElvain). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity, such as filing a complaint of discrimination; (2) her employer subjected her to an adverse employment action; and (3) a causal connection exists between the

---

[2] McElvain's claim that none of these investigations resulted in discipline may be true, but it raises the question of why were there eight rapid fire investigations at all, at the time they commenced, when none led to discipline?

protected activity and the adverse action. *See Hardage v. CBS Broadcasting Inc.*, 427 F.3d 1177, 1188 (9th Cir. 2005). If plaintiff makes a prima facie case, the burden shifts to her employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *See id*. The plaintiff bears the ultimate burden of demonstrating that this explanation was instead a pretext for discrimination. *Id*.

Ballou's complaint asserts Fourteenth and First Amendment claims against McElvain (and Vancouver) but she asserts Title VII claims against only Vancouver.  McElvain argues that courts do not recognize a stand-alone Fourteenth Amendment Equal Protection retaliation claim. Citing *Teigen v. Renfrow*, 511 F.3d 1072, 1085-86 (10th Cir. 2007) ("the proper claim is not an equal protection claim brought in federal court, but a claim under the applicable anti-retaliation law brought in the forum designated to redress such harm.") (other citations omitted). He thus argues that this Court's prior ruling [Dkt. #28] on the viability of this claim was wrong.

Ballou argues that the evidence of retaliation (and pretext) is ample, and that the Court properly determined that her Equal Protection claim was viable. She cites *Maynard v City of San Jose*, 37 F3d 1396 (9th Cir 1994) and *Coszalter v City of Salem*, 320 F3d 968, 977 (9th Cir 2003). *Maynard* involved a white plaintiff asserting retaliation claims (for reporting racial animus toward a person of color) under the Fourteenth Amendment and Title VII. The opinion describes his claim as a "§ 1983" claim and only implicitly endorses the viability of an Equal Protection retaliation claim. *Coszalter* involved a *First* Amendment retaliation claim like the one Ballou asserts, discussed below.

It is a close question. But there is not a Ninth Circuit (or Supreme Court) cases flatly holding that Equal Protection does not apply to a retaliation claim, and the Court already ruled that the claim was plausible. [Dkt. # 28]. McElvain's new motion is not based on any new

evidence or authority. Furthermore, as McElvain seems to implicitly concede, Ballou could allege a Title VII retaliation claim against McElvain on this same factual basis without prejudicing him; no additional discovery or motion practice would be necessary. McElvain's Motion to Dismiss Ballou's Fourteenth Amendment retaliation claim is **DENIED**.

McElvain also seeks dismissal of Ballou's First Amendment retaliation claim. He argues that Ballou is required to show injury, which is to say she must show "but-for" causation: she must demonstrate that the adverse action (passing her over for promotion) would not have occurred absent retaliatory motive. Citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019), and *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977). He claims that she must demonstrate that he would not have passed her over for promotion even absent his alleged gender bias. He claims that he decided to promote Ruder rather than Ballou before he learned of Ballou's lawsuit. But he knew about her internal, EEOC, and state tort claims before that decision was made. Each of these is a First Amendment protected activity. The fact he did not know Ballou filed an actual lawsuit until after he promoted someone else is not proof that he was not retaliating against her. And it is not at all clear that Ballou carries the burden of somehow proving that McElvain would *not* have passed her over even absent the investigations; such a burden might not be bearable in any case. McElvain has certainly not established as a matter of law that he would have done so, or why.

McElvain also argues that this lawsuit—commenced in accordance with her First Amendment-protected right to speak or petition the government for redress—does not raise a matter of public concern, because Ballou admits she seeks only to remedy *her* being passed over for numerous promotions. Thus, he claims, it does not raise a matter of public concern. Ballou correctly points out that this legal issue was already the subject of a motion and an order [Dkt. #

28]. The Motion for summary judgment on Ballou's First Amendment claim on these bases is **DENIED** for the reasons previously articulated.

Finally, McElvain again claims that he is entitled to qualified immunity. He concedes that, as a general matter, the Equal Protection Clause prohibits discrimination, and that the First Amendment prohibits retaliation. But, he claims, to establish that the rights at issue were "clearly established," Ballou must show in a "particularized" manner that the facts of this case have already been adjudged to be unconstitutional in a prior case. This too was the subject of a prior Motion and Order, and the Court disagrees that the facts presented after discovery change that calculus. McElvain's Motion for Summary Judgment on qualified immunity is similarly **DENIED**.

**B. Ballou's § 1983 *Monell* claims against Vancouver.**

To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). Under *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation. *Board of County Com'rs v. Brown*, 520 U.S. 397, 404 (1997). A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

Vancouver also seeks summary judgment, arguing primarily that Ballou cannot prove an underlying constitutional deprivation. This issue is discussed and resolved above. Viewed in the light most favorable the non-moving party, the evidence would permit a fact-finder to determine

that McElvain discriminated, and retaliated, against Ballou, based on her gender and her complaining about gender discrimination.

Vancouver's Motion rests on the same factual and legal underpinnings as McElvain's Motion: there was no discrimination or retaliation; Ballou claims she was treated unfairly but does not show that the reasons for passing her over were pretextual. Vancouver claims that it, like McElvain, is entitled to the "same actor" inference.

Vancouver's motion addresses the more traditional *Monell* defenses—the allegedly unconstitutional conduct was not the result of a policy, practice, or custom that was the moving force behind the constitutional deprivation—in a footnote. It argues that agreeing with an independent investigation's outcome is not enough to impose *Monell* liability, and urges the court not to confuse decision-making authority (which McElvain had) and policy-making (which he did not).

Ballou concedes that the civil service commission created the promotion eligibility test and list, and City Manager Holmes is Vancouver's policy-maker. But she argues persuasively that McElvain was delegated the final authority to select names from the list, and demonstrates that even McElvain thought he had broad discretion over IA matters. Citing *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 986 (9th Cir. 2002) (factual question as to whether official was delegated policy making authority on hiring firing and investigatory matters not subject to review by the actual policy-makers).

Ballou also provides ample evidence from which a jury could find that Vancouver's Police Department did have a gender bias problem, and it knew it. The City's Motion for Summary Judgment on Ballou's Monell claims is DENIED.

ORDER - 11

**C. Ballou's Title VII and WLAD claims.**

Vancouver argues that Ballou's Title VII disparate treatment claims against it are fatally flawed for the same reasons that McElvain sought summary judgment: it had legitimate, non-discriminatory reasons for denying her a promotion and for permitting ongoing investigations into her conduct. It concedes that this claim (like Ballou's WLAD claims) tracks the § 1983 claims, and that Title VII is "arguably" more lenient. [Dkt. # 37 at 17].

Therefore, for the reasons described above, there are numerous factual issues that require a trial on Ballou's Title VII and WLAD claims. Vancouver's Motion for Summary Judgment on them is **DENIED**, with one exception.

Vancouver claims that Ballou's hostile work environment claims under Title VII and WLAD cannot survive. It argues persuasively that there is no evidence that IA investigations the commenced and pursued the because of her gender, or that they were themselves severe or pervasive enough to amount an alteration of her employment conditions. Citing *Vasquez v County of Los Angeles*, 348 F3d 634 (9th Cir 2003). The reports that led to the investigations may have been bogus or exaggerated, and Ballou will have a chance to convince a jury that they were a "fig leaf" for McElvain's real, discriminatory motive in refusing to promote her to Sergeant. But they were not themselves unlawfully onerous and they were not pursued based on gender. Vancouver's Motion for Summary Judgment on Ballou's Title VII (and substantially similar WLAD) hostile work environment claim is **GRANTED**.

## II. CONCLUSION.

At bottom, Ballou claims the IA investigations didn't start until she reached the top of the promotion eligibility list, and Vancouver claims Ballou never complained about gender discrimination until someone else got promoted instead. A jury will decide who is telling the truth. McElvain's Motion for Summary Judgment on Ballou's Fourteenth and First Amendment

claims, and for qualified immunity, is **DENIED**. Vancouver's Motion for Summary Judgment on the same bases is **DENIED**, *except* that the Motion for Summary Judgment on the hostile work environment (Title VII and WLAD) is **GRANTED** and those claims are **DISMISSED** with prejudice.

IT IS SO ORDERED.

Dated this 17th day of April, 2020.

Ronald B. Leighton
United States District Judge