**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JULIE BALLOU,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>JAMES MCELVAIN, PHD, in his individual and representative capacity,<br>*Defendant-Appellant*,<br><br>and<br><br>CITY OF VANCOUVER, a municipal corporation,<br>*Defendant.* | No. 20-35416<br><br>D.C. No.<br>3:19-cv-05002-RBL<br><br>ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted May 6, 2021
Seattle, Washington

Filed September 28, 2021
Amended March 24, 2022

Before:  Mary H. Murguia, Chief Judge, and Danny J. Boggs[*] and Marsha S. Berzon, Circuit Judges.

Order;
Opinion by Judge Berzon

## SUMMARY[**]

## Civil Rights

The panel amended its opinion filed on September 28, 2021, filed an amended opinion, denied a petition for panel rehearing, denied a petition for rehearing en banc on behalf of the court, and ordered that no further petitions shall be entertained.

In the amended opinion, the panel affirmed the district court's order denying, on summary judgment, qualified immunity to Police Chief James McElvain on plaintiff's First Amendment and Equal Protection disparate treatment claim; and remanded for the district court to clarify its ruling on the question of whether McElvain was entitled to qualified immunity on plaintiff's claim that she was retaliated against, in violation of the Fourteenth Amendment's Equal Protection Clause, in an action brought pursuant to 42 U.S.C. § 1983 alleging retaliation and employment discrimination.

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Plaintiff, Julie Ballou, asserted that McElvain discriminated against her because of her gender by intentionally subjecting her to internal affairs investigations to preclude her eligibility for promotion and then declining to promote her to sergeant even though she was the most qualified candidate. The panel held that, construing all facts and inferences in her favor, Ballou sufficiently alleged unconstitutional sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff established a prima facie claim for disparate treatment and the record supported the conclusion that McElvain's articulated reasons for not promoting Ballou were pretextual. The panel rejected, as profoundly mistaken, McElvain's argument that to state an equal protection claim, proof of discriminatory animus alone was insufficient, and plaintiff must show that defendants treated plaintiff differently from other similarly situated individuals. The panel stated that the existence of a comparator is not a prerequisite to stating a disparate treatment claim under the Fourteenth Amendment.

The panel held that the actions alleged here were so closely analogous to those identified in *Lindsey v. Shalmy,* 29 F.3d 1382, 1385-86 (9th Cir. 1994), and so clearly covered by the focus on promotion in *Bator v. State of Hawai'i,* 39 F.3d 1021, 1028 (9th Cir. 1994), that any reasonable officer would recognize that discriminatorily conducting an investigation to stall a promotion as unconstitutional under the two cases, read in combination. McElvain was therefore not entitled to qualified immunity on the claim that he encouraged and sustained discriminatory investigations into Ballou's workplace performance and thereby denied her promotion at least in part on the basis of sex. As Ballou's disparate treatment claim alleged that McElvain violated her clearly

established rights under the Equal Protection Clause,
McElvain was not entitled to qualified immunity on that
claim.

The panel next addressed the question of whether
McElvain was entitled to qualified immunity on the claim
that he violated Ballou's rights under the Equal Protection
Clause of the Fourteenth Amendment by retaliating against
her for opposing defendants' sex discrimination. Because
the panel's jurisdiction under the collateral order doctrine
was limited to reviewing the denial of qualified immunity,
and because the panel could not discern from the district
court's order whether it granted, denied, or did not address
McElvain's assertion of qualified immunity as to Ballou's
Fourteenth Amendment Equal Protection retaliation claim,
the panel remanded to the district court to clarify its order as
to that claim.

Finally, the panel affirmed the denial of qualified
immunity to McElvain on Ballou's First Amendment
retaliation claim. The panel held that Ballou's speech
opposing sex discrimination in the workplace was inherently
speech on a matter of public concern and was clearly
protected by the First Amendment. Whether Ballou's
protected expression actually was the but-for cause of the
adverse employment actions went to the ultimate question of
liability and needed to be resolved by the jury at trial. But it
did not bear on the question before the panel now—whether
retaliating against Ballou for that expression would, as a
matter of law, violate her clearly established constitutional
rights. Because Ballou's factual account was not "blatantly
contradicted by the record," the panel would not disturb the
district court's determination that Ballou's retaliation claims
were sufficiently supported to survive summary judgment.

## COUNSEL

Daniel G. Lloyd (argued) and Sara Baynard-Cooke, Assistant City Attorneys, City Attorney's Office, Vancouver, Washington, for Defendant-Appellant.

Matthew C. Ellis (argued), Matthew C. Ellis P.C., Portland, Oregon; Stephen L. Brischetto, Portland, Oregon; for Plaintiff-Appellee.

## ORDER

The opinion filed on September 28, 2021, and reported at 14 F.4th 1042, is hereby amended. An amended opinion is filed concurrently with this order.

With the opinion as amended, the panel unanimously voted to deny the petition for panel rehearing. Chief Judge Murguia voted to deny the petition for rehearing en banc, and Judge Boggs and Judge Berzon so recommended. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for panel rehearing and rehearing en banc, Docket No. 42, is **DENIED**. No further petitions for panel rehearing or rehearing en banc will be entertained.

## OPINION

BERZON, Circuit Judge:

Julie Ballou, a police officer in Vancouver, Washington, scored high enough on the examination for promotion to sergeant to be eligible for promotion but was repeatedly passed over, including when she was highest on the promotion list. James McElvain, the Police Chief who made the promotion decisions, instigated a series of investigations into Ballou's reporting practices and refused to promote her while the investigations were pending. Ballou sued, alleging that McElvain violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment by discriminating against her on the basis of sex in refusing to promote her and by retaliating against her for objecting to that discrimination.

We affirm the denial of qualified immunity as to Ballou's First Amendment and Equal Protection Clause disparate treatment claims. As to McElvain's argument that he is entitled to qualified immunity on Ballou's claim that she was retaliated against in violation of the Equal Protection Clause of the Fourteenth Amendment, we cannot discern from the district court's order whether we have jurisdiction under the collateral order doctrine to resolve that question, and so we remand to the district court to clarify its ruling.

## I.

In 2017, Julie Ballou and several other Vancouver police officers took an exam to determine eligibility for promotion to the rank of sergeant. Under Washington civil service rules, when a vacancy arises, the Police Chief has discretion to promote any of the three highest-scoring candidates on the relevant promotion exam. Rules & Regs., Vancouver Civ.

BALLOU V. MCELVAIN                    7

Serv. Comm'n § 11.3(a) (2020).  Between 2013 and 2018, every time he filled a vacancy McElvain promoted the highest-ranked person on the relevant list.

Ballou scored third-highest in her sitting of the sergeant's exam.  At the time, there were no sergeant vacancies available, so no one was promoted.

Three months after the sergeant's exam, before any promotions had been made, a citizen called the Vancouver police department to follow up on a burglary report she had made to Ballou.  Considering the inquiry, Rod Trumpf, the supervising sergeant, discovered that, in violation of department policy, Ballou had not written and filed a report on the incident.  Trumpf thereupon initiated an internal affairs investigation into Ballou's conduct.

The following month, Chief McElvain asked Barbara Kipp, an investigating officer, to determine if Ballou's failure to file a report "was a one-time incident or [part] of a pattern." Kipp reviewed over a year of records and identified seven incidents for which, in Kipp's view, Ballou should have filed a report but did not.  In June of 2018, Ballou's supervising lieutenant issued her a letter of reprimand.

Two sergeant vacancies arose while the internal affairs investigation of Ballou was ongoing.  McElvain promoted the two officers ranked higher than Ballou on the eligibility list, leaving Ballou the highest-ranked officer on the sergeant list.  Shortly after Ballou received her letter of reprimand, McElvain, citing the internal affairs investigations and Ballou's failure to follow protocol, announced that he did not intend to promote her to sergeant.

This decision caused a stir in the department.  The week following McElvain's announcement, some women

officers—but not Ballou herself—raised at a meeting with
McElvain Ballou's eligibility for promotion.    In that
meeting, officers indicated that it was atypical to initiate a
broad internal affairs investigation into an officer for failing
to follow up on a citizen call.  One of the officers in that
meeting, Commander Amy Foster, pointed out that Brian
Ruder, an officer who had received a verbal reprimand for
failing to write a report on a sexual assault call, had not, at
that time, been subjected to an internal affairs investigation,
either into the specific incident or into his reporting practices
generally.

The day after that meeting, McElvain announced that he
would be promoting Erik Jennings, the person ranked
directly below Ballou on the sergeant list.  McElvain also
directed that an investigation be opened against Ruder who,
after Jennings's promotion, was tied with Kevin Barton as
the next-highest-ranked candidate after Ballou.

Shortly    thereafter,  Ballou  sent  McElvain  and  Eric
Holmes, the Vancouver city manager, an email stating that
McElvain's decision to pass her over for promotion was "a
textbook example of applying a different, and harsher,
standard to women than to men."   In her email, Ballou
asserted that McElvain had "in more than one instance . . .
promoted male candidates who have had sustained [internal
affairs investigation] findings against them for much more
serious violations." This assertion apparently referred to
Ryan Junker and Jeremy Free, officers who had previously
been promoted to the rank of corporal despite having been
disciplined following internal affairs investigations—in
Junker's case, for shooting himself in the foot, and in Free's
case, for obstructing an investigation into an allegation that
he had driven under the influence of alcohol.

Ballou's email contended that she had been "the victim of gender discrimination at least twice: first by the sergeant who filed the [internal] complaint against me but not the men on his shift for the same conduct, and second by the Chief who chose not to promote me because of a minor policy violation but who, on at least several occasions, promoted men with more serious [disciplinary] findings." She further stated: "I have been advised to hire a lawyer and file a gender discrimination suit against the City. I would prefer not to do that for many reasons, not only because of the cost to the City, but more importantly, because of the harm it will cause to the City's reputation." She concluded by asking that she be promoted immediately. Ballou followed up this email with a list of possible report-writing violations by male officers.

Following Ballou's email, McElvain neither promoted Ballou nor investigated any of the violations by the other officers she had identified. Ballou continued to be investigated for violations of department reporting policy. Between February 2018, when she first became eligible for promotion to sergeant, and May 2019, when she was ultimately promoted, Ballou was the subject of eight internal affairs investigations.

In September 2018, two months after her email to McElvain but more than seven months before her eventual promotion, Ballou served a state tort claim on the City, alleging sex discrimination and seeking damages. Shortly thereafter, a new sergeant vacancy became available. McElvain promoted Kevin Barton, a candidate ranked just below Ballou on the eligibility list and tied with Ruder. After that promotion, in November 2018, Ballou filed a second state tort claim, alleging "further sexual discrimination due to her most recent non-promotion,"

"further claims for discriminatory discipline," and "claims for retaliation."

Ballou filed the present suit under 42 U.S.C. § 1983 in federal court on January 3, 2019, alleging denial of her constitutional right to equal protection and seeking damages. The following week, on January 10, McElvain announced that he intended to promote Ruder, now the second-ranked candidate, over Ballou. McElvain contends that he announced this decision before he learned of this lawsuit.

In May 2019, more than a year after she first became eligible for promotion, McElvain promoted Ballou to the rank of sergeant.

After Ruder's promotion, Ballou amended her federal complaint to add that the ongoing investigations against her and the decision to promote Ruder had been retaliatory, in violation of Ballou's rights under the Petition Clause of the First Amendment. She also filed a charge with the Equal Employment Opportunity Commission (EEOC) against the City of Vancouver and then brought new claims against the City under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. The amended complaint retained Ballou's assertion that McElvain had violated her right to be free from sex discrimination under the Equal Protection Clause by discriminatorily investigating her, passing her over for promotion, and "retaliating against her for opposing . . . sex discrimination."

McElvain filed a motion for partial judgment on the pleadings, asserting qualified immunity as to Ballou's claims of disparate treatment and of retaliation. The district court denied that motion in its entirety. Both McElvain and the City of Vancouver then moved for summary judgment, with McElvain again asserting qualified immunity. The

district court denied summary judgment on Ballou's Equal Protection and First Amendment claims and denied McElvain qualified immunity on the ground that "the Equal Protection Clause prohibits discrimination, and . . . the First Amendment prohibits retaliation." The district court also denied the City's motion for summary judgment on several of Ballou's Title VII and state-law claims but granted summary judgment on her hostile-work-environment claim. McElvain moved for reconsideration, which the district court denied.

McElvain now appeals the denial of qualified immunity.

## II.

This case comes before us as an interlocutory appeal from a denial of summary judgment. Denials of summary judgment are typically not appealable, as they are not final orders. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944 (9th Cir. 2017). We may, however, review orders denying qualified immunity under the collateral order exception to finality. *Plumhoff v. Rickard*, 572 U.S. 765, 771–73 (2014); *Foster v. City of Indio*, 908 F.3d 1204, 1209 (9th Cir. 2018) (per curiam). In such cases, the scope of our review is "circumscribed." *Foster*, 908 F.3d at 1210 (quoting *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013)). Unless the plaintiff's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it," *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)), we may not review the district court's determination that "the pretrial record was sufficient to show a genuine issue of fact for trial," *Foster*, 908 F.3d at 1210 (quoting *Johnson v. Jones*, 515 U.S. 304, 307 (1995)). We therefore lack jurisdiction over any aspects of the present dispute that turn on that question and instead consider only "whether the

defendant would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Estate of Anderson v. Marsh*, 985 F.3d 726, 731 (9th Cir. 2021) (alterations omitted) (quoting *George*, 736 F.3d at 836); *see id.* at 732.

We review the denial of qualified immunity *de novo*. *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021). We must affirm the district court's denial of qualified immunity if, resolving all factual disputes and drawing all inferences in Ballou's favor, McElvain's conduct (1) violated a constitutional right that (2) was clearly established at the time of the violation. *See Estate of Anderson*, 985 F.3d at 731; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Conduct violates a "clearly established" right if "the unlawfulness of the action in question [is] apparent in light of some pre-existing law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1151–52 (9th Cir. 2021) (quoting *Devereaux v. Perez*, 218 F.3d 1045, 1053 (9th Cir. 2000)). For a right to be "clearly established," there need not be a Supreme Court or circuit case "directly on point," but "existing precedent must place the lawfulness of the conduct beyond debate." *Tobias v. Arteaga*, 996 F.3d 571, 580 (9th Cir. 2021) (alteration and internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

## A.  Disparate Treatment

We first consider whether McElvain is entitled to qualified immunity on Ballou's claim that she was subjected to discriminatory treatment because of her sex, in violation of the Equal Protection Clause of the Fourteenth Amendment. Ballou contends that McElvain discriminated against her because of her gender by intentionally subjecting

her to internal affairs investigations to preclude her eligibility for promotion and then declining to promote her to sergeant even though she was the most qualified candidate.

### i.

The district court held that Ballou had produced sufficient evidence, including circumstantial evidence of discriminatory intent, to preclude summary judgment on the first qualified immunity prong, whether McElvain failed to promote her because of sex.  We agree that, construing all facts and inferences in her favor, Ballou has sufficiently alleged unconstitutional sex discrimination.

The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose.  *See Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 504 (9th Cir. 2016).  A plaintiff may establish discriminatory purpose by "'produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely tha[n] not motivated' the defendant and that the defendant's actions adversely affected the plaintiff in some way."  *Id.* (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013)).  Where direct evidence is unavailable, plaintiffs can, and frequently do, rely on the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as a way of channeling inquiry into the available circumstantial evidence.  That framework originated in cases interpreting Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2, but its use has since expanded to other discrimination statutes and to constitutional equal protection, *see, e.g.*, *Anthoine v.*

*N. Cent. Cntys. Consortium*, 605 F.3d 740, 753 (9th Cir. 2010).

Under *McDonnell Douglas*, a plaintiff may make out a prima facie case of discrimination by demonstrating that "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021) (alterations adopted) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)) (applying *McDonnell Douglas* in the Title VII context). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to "show a legitimate, nondiscriminatory reason for the challenged actions." *Id.* If he is able to do so, the burden "returns to the plaintiff, who must show that the proffered nondiscriminatory reason is pretextual." *Id.*

Ballou has established a prima facie claim for disparate treatment. It is undisputed that once Ballou was listed among the top three candidates on the sergeant list, she was eligible for promotion but was passed over for that promotion several times in favor of male candidates. One male officer, Ruder, was promoted to the same rank sought by Ballou—sergeant—despite having been investigated for precisely the same policy violation for which Ballou was investigated. Two other officers were promoted to corporal, a lower rank than sergeant, despite arguably more egregious violations. The record also indicates that Ballou was subjected to repeated internal affairs investigations for failure to write up reports on incidents, while male officers were not routinely subjected to investigations for the same conduct, and that the investigations became a purported

reason she was not promoted.   Drawing all facts and inferences in her favor, Ballou has readily established the "minimal" degree of proof required to establish a prima facie case for discrimination.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (applying *McDonnell Douglas* in the Title VII context).

As Ballou has established a prima facie case, the burden shifts to McElvain to articulate "legitimate, nondiscriminatory reason[s]" for the actions Ballou challenges.  *Freyd*, 990 F.3d at 1228.  In his motion for summary judgment, McElvain asserted that Ballou was not promoted because she "failed a basic function of policing, gave conflicting explanations for her actions, and was soon under investigation for allegations of the identical misconduct."  Ballou does not dispute that these reasons, if true and complete, would be legitimate, nondiscriminatory bases for non-promotion, so we shall assume that they are.

At the third *McDonnell Douglas* step, Ballou presented evidence that McElvain's stated reasons for not promoting her were "false" and "based on sex stereotypes." "Determining whether invidious discriminatory purpose was a motivating factor" for a government action "demands a sensitive inquiry into" the available evidence, including the "background" and "specific sequence of events leading up to the challenged decision," "[d]epartures from the normal procedural sequence," and "contemporary statements" by the decision maker.  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977).

Here, normal procedure was for McElvain to promote the highest-ranked candidate on the sergeant list.  Drawing all inferences in Ballou's favor, the record indicates that it was not normal department procedure to initiate a broad internal affairs investigation into an officer for failing to file

a report.  Furthermore, the record shows that McElvain's
request for an expanded investigation into Ballou's conduct
occurred close in time to when Ballou became the first
woman in McElvain's tenure to be eligible for promotion to
sergeant.

The record testimony regarding internal departmental
discussions about Ballou further supports her contention that
McElvain's articulated reasons for failing to promote her
was pretextual.  Two women officers who had met with
McElvain in July of 2018 testified that they had specifically
identified both the internal affairs investigations into Ballou
and the decision not to promote her as examples of
discriminatory practices in the department.  They and other
officers who attended the meeting expressed concerns about
what they perceived as a discriminatory department culture,
labelled the department's conduct as "disparate treatment,"
and identified Ruder as a "white male comparator" who had
been treated more favorably than Ballou.  Within a day of
this discussion, in which he was urged to "take some time"
to reflect on possible discrimination in the department,
McElvain announced the promotion of Jennings over
Ballou.  This sequence of events, together with the departure
from standard department procedure, indicates that
McElvain was at best unconcerned about allegations of
discrimination in the department.

Additionally, the district court determined that the
comparators Ballou identified were sufficiently similar to
her to support an inference of disparate treatment.  To
establish similarity under the *McDonnell Douglas*
framework, the individuals being compared "need not be
identical; they must only be similar 'in all material
respects.'"  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151,
1157 (9th Cir. 2010) (quoting *Moran v. Selig*, 447 F.3d 748,

755 (9th Cir. 2006)) (applying *McDonnell Douglas* to a Title VII claim).  Generally, "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

Here, Ruder held the same position as Ballou when he applied for promotion and was promoted to sergeant—the same promotion Ballou sought.  Likewise, Ruder and Ballou "display[ed] similar conduct."  *Id.*  Although *Vasquez* held that officers not accused of "problematic conduct of comparable seriousness" might not be so similarly situated as to sustain a case for discrimination under Title VII, *id.*, in this case Ballou and Ruder were both accused of the same conduct: failure to write a report.  Ruder is therefore sufficiently "similarly situated" to support an inference of discriminatory intent.

In sum, the district court concluded that whether McElvain's stated reasons for not promoting Ballou were "valid and non-discriminatory . . . raises numerous questions of fact precluding summary judgment."  Again, we may not review that conclusion in the present procedural posture.  *See Estate of Anderson*, 985 F.3d at 730–31.  Assuming, as we must when reviewing a denial of qualified immunity at summary judgment, that these factual disputes are resolved in Ballou's favor, *id.* at 731, the record supports the conclusion that McElvain's articulated reasons for not promoting Ballou were pretextual and that Ballou has thus established a disparate treatment claim under the Equal Protection Clause.

## ii.

McElvain argues vigorously that Ballou's disparate treatment claim nonetheless cannot succeed because the

male police officers Ballou points to as comparators for her claim are not sufficiently similar to Ballou to demonstrate discrimination. He asserts that "proof of discriminatory animus alone will not suffice to establish an equal protection violation," as "proof that others similarly situated in a constitutional sense were treated more favorably is an essential element" of such a claim. Because, he argues, Ballou has not pointed to any male officer "arguably indistinguishable from Ballou in terms of being promoted to sergeant despite recent sustained misconduct," she cannot state a claim under the Equal Protection Clause, *even* if she has presented sufficient evidence that the reason she was not promoted was that she is a woman—that is, that had she been a man, she would have been promoted earlier than she was.

McElvain's account of the requirements for making out an Equal Protection claim is profoundly incorrect, as it is squarely contrary both to our precedents and to the basic precepts underlying the Equal Protection Clause.

The central inquiry in any disparate treatment claim under the Equal Protection Clause is whether "an 'invidious discriminatory purpose was a motivating factor'" in some government action. *Ave. 6E Invs.*, 818 F.3d at 504 (quoting *Arlington Heights*, 429 U.S. at 266) (applying this standard to claims under both the Equal Protection Clause and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*). A plaintiff may make out a disparate treatment claim by "simply produc[ing] direct or circumstantial evidence demonstrating that" a government action was motivated by a discriminatory purpose. *Id.* (quoting *Pac. Shores*, 730 F.3d at 1158). "*[A]ny* indication of discriminatory motive may suffice" to allow a disparate treatment claim to survive summary judgment. *Arce v. Douglas*, 793 F.3d 968, 978 (9th Cir.

2015) (emphasis added) (quoting *Pac. Shores*, 730 F.3d at 1159).

Plaintiffs bringing disparate treatment claims, either under the Equal Protection Clause or under antidiscrimination statutes, may, as we have explained, *supra* at 13–14, point to comparators as circumstantial evidence of unlawful discriminatory intent. But a relevant comparator is not an *element* of a disparate treatment claim. As our precedent makes clear, the existence of a comparator "is only *one* way to survive summary judgment on a disparate treatment claim." *Pac. Shores Props.*, 730 F.3d at 1158 (citing *McDonnell Douglas*, 411 U.S. 792); *see also Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020).[1] With or without comparator evidence, courts determine whether a government action was motivated by discriminatory purpose by engaging in the "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *De La Cruz v. Tormey*, 582 F.2d 45, 59 (9th Cir. 1978) (quoting *Arlington Heights*, 429 U.S. at 266).

McElvain insists otherwise—that "to state an equal protection claim of any stripe . . . a plaintiff *must* show that the defendant treated the plaintiff differently from similarly situated individuals," pointing to *Pimentel v. Dreyfus*, 670 F.3d 1096, 1106 (9th Cir. 2012) (per curiam) (emphasis added). In so arguing, McElvain misunderstands the

---

[1] *Pacific Shores Properties* analyzed the disparate treatment claim through the lens of the Fair Housing Act. But *Avenue 6E Investments* clarified that "[i]f a governmental actor engages in . . . discrimination [under the Fair Housing Act], such conduct also violates the Equal Protection Clause," 818 F.3d at 502 (citing *Arlington Heights*, 429 U.S. at 265–66), and that the inquiry into whether disparate treatment has occurred is the same under both the Fair Housing Act and the Equal Protection Clause, *see id.* at 504.

significance of *Pimentel* and also of *Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013), another case on which McElvain relies for his novel proposition.

In *Pimentel*, we denied a preliminary injunction against Washington State's termination of state-funded food assistance for certain noncitizens. *See* 670 F.3d at 1098, 1106. In so doing, we held that the state had not engaged in discrimination, because the *repeal* of a state measure adopted to benefit a certain class, without more, does not necessarily constitute discrimination. *See id.* at 1107. Because we held the plaintiffs had not stated an equal protection claim, we declined to apply strict scrutiny to the state's action. *Id.* at 1106. The language cited by McElvain appears in the portion of the discussion rejecting an equal protection claim based solely on repeal of a beneficial provision; it stands only for the proposition that "[i]n the absence of an equal protection claim, consideration of the level of scrutiny . . . necessarily falls out of the analysis." *Id.* *Pimentel* did not address, and should not be read as disturbing, Supreme Court and circuit case law establishing that comparator evidence is not an essential element of a disparate treatment claim.

In *Furnace*, we held that the plaintiff had not stated an Equal Protection claim because he did not establish that he was part of a class that was being discriminated against. *See* 705 F.3d at 1030–31. The plaintiff's failure to point to other "similarly situated" individuals was fatal because he was not able to identify the "factor motivating the alleged discrimination." *Id.* at 1030 (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005)). No such problem exists here. Ballou alleges that she was discriminated against on the basis of sex, and it is undisputed that sex is a protected classification under the Equal

Protection Clause.  *See Frontiero v. Richardson*, 411 U.S. 677, 682 (1973).  The cases McElvain cites are therefore inapposite.

McElvain's account of the protections of the Fourteenth Amendment, in addition to being wrong as a matter of law, is contrary to the amendment's fundamental guarantee of "equal protection of the laws." U.S. Const. amend. XIV, § 1. Under McElvain's reading of the Fourteenth Amendment, no plaintiff could state an equal protection claim "*of any stripe*" without an identical comparator, no matter how strong the direct or circumstantial evidence that the reason the plaintiff was detrimentally treated was her sex—or, for that matter, her race.  This view of the Constitution's protections would sweep so broadly as to undermine decades of Supreme Court case law striking down government actions "taken for invidious purposes." *Arlington Heights*, 429 U.S. at 267; *see id.* (collecting cases).  Applied to the present case, McElvain's account of the scope of the Equal Protection Clause would mean that, had Ballou presented an audio recording of McElvain stating that he was declining to promote Ballou specifically because she was a woman and that, moreover, he would never promote a woman to sergeant, this evidence would not support a disparate treatment claim unless he promoted an identical male comparator.

As this example confirms, McElvain's account of Equal Protection law is profoundly mistaken.  The existence of a comparator is not a prerequisite to stating a disparate treatment claim under the Fourteenth Amendment.  To the contrary, comparator evidence in disparate treatment claims can, but need not, be used to support a finding of a discriminatory motive.  It is not a gatekeeping mechanism essential to plaintiffs' ability to prove that they have been

denied equal protection of the laws by being adversely treated on the basis of membership in a protected class. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

### iii.

The remaining question on the sex discrimination disparate treatment claim is whether, assuming all factual disputes are resolved in Ballou's favor, McElvain is entitled to qualified immunity. *See Estate of Anderson*, 985 F.3d at 731. He is not.

It is well established that the Equal Protection Clause "prohibit[s] state actors from engaging in intentional conduct designed to impede a person's career advancement because of her gender." *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994). This prohibition guarantees state employees "a clearly established constitutional right not to be refused employment because of their sex," and to be free from "denial of a promotion, adverse alteration of job responsibilities, and other hostile treatment" in the workplace on account of sex. *Bator v. State of Hawai'i*, 39 F.3d 1021, 1028 (9th Cir. 1994) (citing *Lowe v. City of Monrovia*, 775 F.3d 998, 1011 (9th Cir. 1985) and *Lindsey*, 29 F.3d at 1385–86). Ballou contends that McElvain denied her promotion at least in part on account of her sex; the conduct she alleges falls squarely within the constitutional prohibition outlined in *Lindsey* and *Bator*.

Given *Lindsey* and *Bator*, McElvain is not entitled to qualified immunity on the claim that he discriminatorily denied Ballou a promotion. It is "apparent in light of . . . pre-existing law," *Benavidez*, 993 F.3d at 1152 (quoting *Devereaux*, 218 F.3d at 1053), that discriminatorily instigating an internal investigation against a public

employee violates that individual's constitutional rights. In holding that discriminary employment actions by a public employer against a state employee violate that employee's constitutional rights, *Lindsey* specifically identified "unfavorably altering . . . job assignments," "unfavorable performance evaluations" and "displaying a hostile attitude" toward a plaintiff as examples of adverse employment actions that, if taken with a discriminatory purpose, would violate an employee's "clearly established federal constitutional rights." 29 F.3d at 1386.

The actions alleged here are so closely analogous to those identified in *Lindsey* and so clearly covered by *Bator*'s focus on promotion that any reasonable officer would recognize discriminatorily conducting an investigation to stall a promotion as unconstitutional under the two cases, read in combination. Ballou contends that McElvain initiated several investigations charging Ballou with misconduct. These investigations became the stated grounds for denying Ballou a promotion to which she was otherwise entitled, thus directly limiting her career progression. The investigations had a direct material impact on her employment, by blocking her path to promotion.

McElvain is therefore not entitled to qualified immunity on the claim that he encouraged and sustained discriminatory investigations into Ballou's workplace performance and thereby denied her promotion at least in part on the basis of sex. As Ballou's disparate treatment claim alleged that McElvain violated her clearly established rights under the Equal Protection Clause, McElvain is not entitled to qualified immunity on that claim.

## B. Fourteenth Amendment Retaliation

McElvain next asks us to consider whether he is entitled to qualified immunity on the claim that he violated Ballou's rights under the Equal Protection Clause of the Fourteenth Amendment by "retaliating against her for opposing Defendants' sex discrimination." Because our jurisdiction under the collateral order doctrine is limited to reviewing a denial of qualified immunity, and because we cannot discern from the district court's order whether it granted, denied, or did not address McElvain's assertion of qualified immunity as to Ballou's Equal Protection retaliation claim, we remand to the district court to clarify its order as to that claim.

The district court's dispositions, both on the motion for partial judgment on the pleadings and on the motion for summary judgment, addressed McElvain's assertion of qualified immunity, as it applied to Ballou's claims, only briefly. In the order denying partial judgment on the pleadings, the district court stated, with respect to Ballou's First Amendment retaliation claim, that it is clearly established "that complaints of gender discrimination against a public employer are matters of public concern." Then, addressing McElvain's assertion of qualified immunity generally, the district court stated only that McElvain knew or should have known "that sexually discriminating against an employee and retaliating against her for voicing her concerns, violates her clearly established constitutional rights." The district court did not so state with regard to the Equal Protection retaliation claim in particular.

In his motion for summary judgment, addressing the merits of Ballou's Equal Protection retaliation claim, McElvain argued that the district court should reject that claim because "there is no binding Ninth Circuit case on point," but in the portion of his brief addressing qualified

immunity, he did not specifically assert qualified immunity as to Ballou's Equal Protection retaliation claim. Instead, he argued generally that, while "as a general matter, the Equal Protection Clause prohibits discrimination, and the First Amendment prohibits retaliation," he was entitled to qualified immunity on the "more particularized" questions whether Ballou's failure "to take a police report is a sufficient basis to decline to promote her to a supervisory position" and "whether Ballou's original lawsuit is constitutionally protected."

Apparently reflecting the structure of the arguments advanced in McElvain's motion, the district court's summary judgment order stated generally, as to qualified immunity, that "the Equal Protection Clause prohibits discrimination, and . . . the First Amendment prohibits retaliation." Noting that this qualified immunity argument "was the subject of a prior Motion and Order," the district court denied McElvain's motion for summary judgment on qualified immunity. Although this portion of the district court's order could be read as denying qualified immunity as to all of Ballou's claims, other parts of the district court's order indicate otherwise.

Specifically, in addressing the merits of Ballou's Equal Protection retaliation claim, the district court stated that the viability of such a claim is a "close question," noting that "there is not a Ninth Circuit (or Supreme Court) case[] flatly holding that Equal Protection does not apply to a retaliation claim." In contrast to the part of the district court's order addressing qualified immunity, this reasoning indicates that the district court believed the law had *not* clearly established the right asserted by Ballou. The absence of a case *denying* a right cannot establish clearly that there *is* such a right, nor would there be a "close question" on the merits if the

pertinent law were clearly established.  So the district court's analysis of the merits of the Equal Protection retaliation claim is inconsistent with denying qualified immunity on that claim.

Taking that analysis together with the holdings, we cannot discern whether the district court granted, denied, or simply did not address McElvain's assertion of qualified immunity on Ballou's Equal Protection retaliation claim.  On the one hand, the bottom line of the district court's summary judgment order generally denied qualified immunity and did not specifically carve out Ballou's Equal Protection retaliation claim.  Without more, that conclusion could suggest the district court intended to deny qualified immunity as to all of Ballou's claims.  But the district court did say more.  Specifically, the district court's qualified immunity analysis—like McElvain's motion—stated that "the Equal Protection Clause prohibits discrimination" and "the First Amendment prohibits retaliation," without addressing whether the Equal Protection Clause clearly prohibits retaliation.  And as to that claim, the district court—addressing the merits of Ballou's Equal Protection retaliation claim—indicated that there is not clearly established law on that constitutional issue, a conclusion consistent with granting qualified immunity to McElvain on that claim.

Our jurisdiction under the collateral order doctrine is limited to reviewing a denial of qualified immunity.  *See Plumhoff*, 572 U.S. at 771–72; *Foster*, 908 F.3d at 1209–10.  Where, as here, "we cannot tell for sure" what action the district court took with respect to McElvain's assertion of qualified immunity, "we must either try to discern from the record" what the district court did "or remand for the district court to explain its reasoning."  *Maropulos v. Cnty. of Los*

*Angeles*, 560 F.3d 974, 975 (9th Cir. 2009) (per curiam). Accordingly, rather than venture a guess about our jurisdiction, we remand to the district court to clarify what action, if any, it took with respect to Ballou's Equal Protection retaliation claim.

## C. First Amendment Retaliation

Finally, Ballou contends that McElvain violated her rights under the Petition Clause of the First Amendment by maintaining repeated internal affairs investigations into her work practices and promoting Ruder over her, in retaliation for her opposition to sex discrimination in the workplace. McElvain's counters are that he is entitled to qualified immunity on Ballou's First Amendment claims because (1) the law does not clearly establish that her speech was on a matter of public concern and (2) the forms of her opposition—on his account, internal complaints and state-law tort claims—were not clearly constitutionally protected. And, McElvain further contends, the record does not support the conclusion that Ballou's speech was a cause of the adverse employment actions. Each of these arguments fails at this stage.

First, the content of Ballou's expression is clearly protected by the First Amendment. It is long established, and McElvain does not dispute, that the First Amendment protects a public employee's right to speak out against or petition the government—including via a lawsuit—on "matters of public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context" of the expression, *Connick v. Myers*, 461 U.S. 138, 147–48 (1983), with content weighing as the "greatest single factor" in the analysis, *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)

(quoting *Havekost v. U.S. Dep't of the Navy*, 925 F.2d 316, 318 (9th Cir. 1991)).

McElvain maintains that Ballou here seeks to "constitutionalize the employee grievance," and that her complaints and lawsuit pertain only to matters of private, rather than public, concern. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 392 (2011) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006)). Our circuit case law squarely forecloses McElvain's position. Public employees' expression is on a matter of public concern if it "relat[es] to any matter of political, social, or other concern to the community," *Barone v. City of Springfield*, 902 F.3d 1091, 1102 (9th Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 241 (2014)), and not "upon matters *only* of personal interest." *Rendish v. City of Tacoma*, 123 F.3d 1216, 1223 (9th Cir. 1997) (emphasis added) (quoting *Connick*, 461 U.S. at 147). Some subjects *both* affect a public employee's personal interests *and* implicate matters of public concern. *Rendish* held that unlawful discrimination is such a matter, recognizing that "the public has an interest in unlawful discrimination" in City government, and that employee speech about such discrimination therefore involves matters of public concern even if it arises out of a personal dispute. *Id.* at 1224.

We reiterated this principle in *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917 (9th Cir. 2004). *Alpha Energy* held that "when government employees speak about . . . wrongdoing [or] misconduct . . . by other government employees, . . . their speech is inherently a matter of public concern." *Id.* at 926 (final ellipsis in original) (quoting *Ceballos v. Garcetti*, 361 F.3d 1168, 1174 (9th Cir. 2004), *rev'd*, 547 U.S. 410 (2006)). And *Alpha Energy* clarified that:

> Th[is] rule applies to invidious discrimination as well . . . . Disputes over racial, religious, or other such discrimination by public officials are not simply individual personnel matters. They involve the type of governmental conduct that affects the societal interest as a whole—conduct in which the public has a deep and abiding interest. Litigation seeking to expose such wrongful governmental activity is, by its very nature, a matter of public concern.

*Id.* at 926–27. This rule applies to both administrative and judicial proceedings seeking to "bring to light potential or actual discrimination" by government officials, *id.* at 925 (citing *Lytle v. Wondrash*, 182 F.3d 1083, 1087–88 (9th Cir. 1999)); *see Rendish*, 123 F.3d at 1223–24, and controls even when the plaintiff seeks only private relief for the vindication of her own rights, *see Rendish*, 123 F.3d at 1224.[2] This precedent clearly establishes that speech by public employees about unlawful discrimination in the workplace is inherently speech on a matter of public concern.[3]

---

[2] In so holding, *Alpha Energy Savers* explicitly rejected the Seventh Circuit's reasoning in *Yatvin v. Madison Metro Sch. Dist.*, 840 F.2d 412 (7th Cir. 1988), on which McElvain relies. *See* 381 F.3d at 926.

[3] McElvain argues that our precedent has been cast into doubt by the Supreme Court's decision in *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011), which was decided after *Alpha Energy*. We do not agree with McElvain's reading of *Borough of Duryea*. That case held only that the "public concern" test outlined in *Connick* applies to suits under the Petitions Clause, and that courts should apply the same framework used in Speech Clause claims to assess claims brought under the Petitions

What's more, the record in this case demonstrates that Ballou's allegations concerned considerably more than a personal matter. The Vancouver Police Department's treatment of Ballou generated concern and involvement among other police officers. As a result of that concern, several of them met with McElvain to discuss perceived discriminatory practices in their workplace. Also, Ballou's lawsuit was the subject of at least one news story in the local press. Thus, even if speech alleging discrimination in a public workplace were not *inherently* a matter of public concern—which, as explained *supra*, our case law establishes it is—there is sufficient evidence in the record, drawing all inferences in Ballou's favor, *Estate of Anderson*, 985 F.3d at 731, to conclude that the *specific* expression at issue here was on a matter of more than private concern. We therefore reject the argument that the content of Ballou's speech is not protected by the First Amendment.

McElvain's contention to the contrary notwithstanding, the *form* of Ballou's expression is likewise protected by the First Amendment under clearly established law. The Petition Clause prohibits retaliating against public employees for filing lawsuits. *See Rendish*, 123 F.3d at 1219–23; *Alpha Energy*, 381 F.3d at 925. The parties dispute, as a question of fact, whether McElvain was aware of Ballou's federal suit when he passed her over for promotion in favor of Ruder. Ballou first filed her federal lawsuit on January 3, 2019, a week before McElvain promoted Ruder over her. She served it on January 10. McElvain contends he decided to promote Ruder before he learned of the lawsuit. But even if that were so, the record

Clause. *See id.* at 393–95, 398. *Borough of Duryea* therefore reinforces, rather than undermines, the relevance of our precedent addressing when expression involves a matter of public concern.

nevertheless shows at least one internal affairs investigation was opened against Ballou after she filed her federal complaint.  If, at trial, the jury finds that McElvain retaliated in that respect against Ballou for filing this federal suit, that retaliation would violate Ballou's clearly established rights under the Petition Clause.

McElvain is not entitled to qualified immunity on Ballou's First Amendment claims at this stage of the litigation for another reason as well.  McElvain does not dispute that he was aware of Ballou's state tort-claim notices alleging sex discrimination, filed in the autumn of 2018, several months before Ruder's promotion.  Under Washington law, the service of a state tort notice is a necessary first step in filing suit against a local government entity.  Wash. Rev. Code § 4.96.020.  As a statutory prerequisite to filing a state-court action, such notices are part and parcel of formal litigation proceedings.  And, as established in *Rendish*, the Petition Clause of the First Amendment protects the initiation of a state-court lawsuit by a public employee on a matter of public concern.  *See* 123 F.3d at 1218, 1223–25.  Filing a mandatory administrative complaint to initiate state-court litigation is thus no doubt a form of speech protected by the Petition Clause.

Finally, McElvain contends that Ballou has not established causation—i.e., that she has failed to establish that any adverse employment actions she suffered were *because of* her opposition to sex discrimination in her public workplace.  We lack jurisdiction to address this question.  The district court found that there were disputed questions of material fact sufficient to deny summary judgment to McElvain on the causation aspect of the retaliation claim.  We may review that denial of summary judgment only if

Ballou's version of events is "blatantly contradicted by the record." *Orn*, 949 F.3d at 1171 (quoting *Scott*, 550 U.S. at 380). It is not.

Ballou contends, as part of her retaliation claim, that she was subjected to unwarranted internal affairs investigations in response to her opposition to sex discrimination. The record indicates that several internal affairs investigations were initiated against Ballou *after* McElvain became aware of the action underlying this suit. Likewise, the record supports the conclusion that McElvain was aware of Ballou's internal complaints and state-court claims when he passed her over for promotion in favor of Ruder.

Whether Ballou's protected expression actually was the but-for cause of the adverse employment actions goes to the ultimate question of liability and must be resolved by the jury at trial. But it does not bear on the question before us now—whether retaliating against Ballou for that expression would, as a matter of law, violate her clearly established constitutional rights. Because Ballou's factual account is not "blatantly contradicted by the record," *id.*, we may not disturb the district court's determination that Ballou's retaliation claims were sufficiently supported to survive summary judgment.

We therefore affirm the denial of qualified immunity to McElvain on Ballou's First Amendment claims.

## III.

Because we cannot discern whether the district court denied McElvain qualified immunity on Ballou's claim that she was retaliated against in violation of the Fourteenth Amendment's Equal Protection Clause, we remand to the district court to clarify its summary judgment order on that

issue.  For the reasons explained, we hold that McElvain is not entitled to qualified immunity on Ballou's remaining claims.  We therefore affirm the district court's denial of qualified immunity on Ballou's Equal Protection sex discrimination and First Amendment claims.

**AFFIRMED; REMANDED**.