UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIE BALLOU,<br><br>                    Plaintiff,<br>     v.<br><br>JAMES MCELVAIN,<br><br>                    Defendants. | CASE NO. 3:19-cv-05002-DGE<br><br>ORDER ON MOTION TO AMEND JUDGMENT (DKT. NO. 181) AND MOTION TO RETAX COSTS (DKT. NO. 196) |

## I.      INTRODUCTION

This matter comes before the Court on Plaintiff Julie Ballou's motion to amend judgment (Dkt. No. 181) and motion to retax costs (Dkt. No. 196).  For the reasons discussed herein, the Court GRANTS the motion to amend judgment and DENIES the motion to retax costs.

## II.      BACKGROUND

The Court presumes familiarity with the facts in this case.  (*See* Dkt. Nos. 67, 113.)

Ahead of trial, Defendants issued an offer of judgment to Plaintiff pursuant to Rule 68 of the Federal Rules of Civil Procedure.  (Dkt. No. 184 at 4.)  Defendants offered "to allow

judgment be taken against them for the principal amount of $75,000 plus costs and reasonable attorneys' fees[.]" (*Id.*) Plaintiff rejected the offer. (*Id.* at 1.) After eleven days of trial, the jury issued a verdict, finding Defendant City of Vancouver liable for retaliation under Title VII of the Civil Rights Act of 1964 (Title VII) and the Washington Law Against Discrimination (WLAD) because Plaintiff opposed sex discrimination. (Dkt. No. 178 at 2.) The jury awarded Plaintiff $5,456.20 in non-economic damages. (*Id.* at 4.)

The verdict also found in favor of Defendant City on Plaintiffs' sex discrimination claims under Title VII and the WLAD and found for Defendant James McElvain on all claims. (Dkt. No. 178 at 1–2.)

On December 6, 2023, Defendants moved for costs, including transcripts fees, witness fees, copying costs, and docket fees. (Dkt. No. 182.) The Clerk of the Court granted this motion in part, awarding costs in the amount of $8,230.33. (Dkt. No. 195.) Plaintiff seeks to amend the judgment and retax costs. (Dkt. Nos. 181, 196.)

### III.   DISCUSSION

**A. Motion to Amend Judgment**

Federal Rule of Civil Procedure 59 allows a party to file a "motion to alter or amend a judgment [within] 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e)." *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). However, the alteration or amendment of a judgment is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted). A court may grant a Rule 59(e) motion if it is "presented with newly discovered

evidence, committed clear error, or if there is an intervening change in the controlling law." *Id*. (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

Plaintiff seeks four amendments to the judgment entered by the Clerk. She asks that the amended judgment (1) incorporate economic damages, as previously stipulated; (2) include equitable relief for retroactive seniority as sergeant effective January 22, 2019; (3) award equitable relief in the form of employer contributions to retirement and deferred compensation accounts; and (4) include pre-judgment interest. She also seeks leave to file a motion for attorney fees and costs within 30 days of entry of this order.

1. Economic Damages

Plaintiff contends the parties stipulated to economic damages in the event the jury found liability for the retaliation claim. (Dkt. No. 181 at 2.) Defendants agree. (Dkt. No. 188 at 2.)

The stipulation indicates economic damages will be calculated in the amount of $5,456.20 in the event Plaintiff was successful on her retaliation claim. (Dkt. No. 142 at 2.) Accordingly, the Court GRANTS the motion as to economic damages and ORDERS the judgment be amended to include $5,456.20 in economic damages.

2. Retroactive Seniority

Plaintiff argues she is entitled to retroactive seniority, and all the benefits that would have accrued from that date. (Dkt. No. 181 at 2.) Plaintiff does not indicate what specific benefits she would be entitled to with this retroactive seniority. Defendants do not object to retroactive seniority. (Dkt. No. 188 at 2.) Instead, they argue this has no substantive effect on damages. (*Id*.) Defendants contend that paid-time-off benefits accrue based on years of service, not rank. (*Id*.) Defendants argue all other benefits "are determined by Ballou's order of promotion to

sergeant," and so Brian Ruder's promotion to Lieutenant in January 2023 automatically elevated Plaintiff "to the same seniority rank she now requests." (*Id*.)

The parties appear to agree retroactive seniority effective January 22, 2019 is appropriate. As Plaintiff does not identify any specific additional benefits Plaintiff is entitled to as a result of a seniority date of January 22, 2019, the Court ORDERS only that Defendants provide Plaintiff retroactive seniority effective January 22, 2019.

    3. <u>Employer Contributions</u>

Plaintiff argues the parties stipulated before trial that Defendant City contributes 8.53% of pay to an employee's retirement and matches 1% of employee contributions to a deferred compensation account. (Dkt. No. 181 at 4.)

Defendants concede Plaintiff is entitled to the 1% employer match. (Dkt. No. 188 at 3.) The Court thus ORDERS Defendants match 1% of Plaintiff's contributions to the deferred compensation account.

Defendants assert Defendant City's policy during the relevant time period was to contribute 5.43% rather than 8.53%. (*Id*. at 2–3.) They argue the interest should be calculated using the correct figure. (*Id*.) Plaintiff's reply argues Defendants already stipulated to the 8.53% number ahead of trial. (Dkt. No. 189 at 3.) Plaintiff further argues the Court should phrase its ruling such that any "employer contribution [shall be made] as required by the Department of Retirement Systems to Plaintiff's retirement account for Plaintiff's economic damages of $5,456.20[.]" (*Id*. at 4.) This way, the parties can decide whether the contribution "should be determined based upon when the wages should have been paid (in 2019) rather than when they are paid (in 2023 or 2024)." (*Id*. at 3.)

Title VII is "is intended to make the victims of unlawful discrimination whole[.]" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).  The Court declines to order a stipulated figure that would result in Plaintiff receiving more than what she would have received, had no retaliation occurred.  Accordingly, the Court ORDERS Defendants contribute the percentage required by the Department of Retirement Systems for the relevant time period as of the date wages should have been paid.

4. <u>Pre-Judgment Interest</u>

Plaintiff contends that under 28 USC § 1961, the appropriate interest rate is "the weekly average 1 year constant maturity Treasury yield for the calendar week preceding the date of judgment."  (Dkt. No. 181 at 5.)  Plaintiff also indicates that under Washington law, the "appropriate interest rate for judgments based upon tortious conduct against a public agency is two percentage points above the prime rate on the first business day of the calendar month immediately preceding the date of entry of judgment."  (*Id*.)  By Plaintiff's calculation, the pre-judgment interest rate under Washington law would be whatever the prime rate was on April 1st plus 2%.  Plaintiff contends the Court should apply the Washington calculation formula but does not provide authority as to why.  (*Id*.)

Defendants argue that although a court may order pre-judgment interest under Title VII, "it is the Plaintiff's burden to state 'what amount of prejudgment interest it is seeking, . . . the date when the interest began accruing, or otherwise explain[] how the Court should calculate such interest.'"  (Dkt. No. 188 at 4) (quoting *Diamondstar Ent. Holdings, LLC v. THH, LLC*, 641 F. Supp. 3d 849, 870 (C.D. Cal. 2022)).  They contend Plaintiff failed to put forth such specifics, and so her motion for pre-judgment interest should be denied.  (*Id*.)

When a court maintains federal question jurisdiction, the decision whether to award prejudgment interest is a matter within the court's discretion, to be decided according to federal law. *In re Nw. Territorial Mint, LLC*, 591 B.R. 852, 874 (Bankr. W.D. Wash. 2018) (citing *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971); *see also United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1553 (9th Cir. 1994)).  Under federal law, "the rate of prejudgment interest is the Treasury Bill rate as defined in 28 U.S.C. § 1961 unless the district court finds on substantial evidence that a different prejudgment interest rate is appropriate." *Id*. (citing *United States v. Gordon*, 393 F.3d 1044, 1058 n.12 (9th Cir. 2004).  Because this Court proceeds under federal question jurisdiction, and because Plaintiff puts forth no reason why the Washington calculation is more appropriate, the Court defaults to using the federal rate.  Plaintiff outlines in her motion the federal rate calculation with sufficient specificity for determining pre-judgment interest, which can only be calculated in full after the Court rules on the various economic damages and benefits in this motion.

Accordingly, the Court ORDERS Defendants pay pre-judgment interest in accordance with the final judgment amount using the federal rate/method of calculation.

5. <u>Filing of Motion for Attorney Fees and Costs</u>

Plaintiff asks the Court to provide a period of 30 days after entry of final judgment for Plaintiff to submit her petition for attorney fees and costs. (Dkt. No. 181 at 5.)  Defendants argue the judgment was entered on November 22, 2023 and that under Federal Civil Procedure Rule 54(d)(2), Plaintiff's request for an extension to file a motion for fees and costs is untimely.  (Dkt. No. 188 at 4.)  Defendants note that under this Court's Local Civil Rules relief from a deadline should be filed before the deadline with sufficient time for the Court to rule on the motion prior

to the deadline. *See* LCR 7(j). A party should not assume such motion will be granted and is required to comply with the existing deadline unless otherwise ordered. (*Id.*)

Notwithstanding, the Court has discretion in granting an extension on a motion for attorney fees. Fed. R. Civ. P. 54(d)(2)(B)(i) ("Unless a statute *or a court order* provides otherwise, the motion [for attorney fees] must . . . be filed no later than 14 days after the entry of judgment.") (emphasis added). Arguably, the Judgment on Jury Verdict (Dkt. No. 179) is not a final judgment because it did not adjudicate "all the claims or the rights and liabilities" of all the parties. *See* Fed. R. Civ. P. 54(b). The Judgment on Jury Verdict did not award the equitable relief, the stipulated economic damages, or the employer contributions, all of which are the subject of Plaintiff's motion to amend judgment.

Accordingly, the Court exercises its discretion and GRANTS Plaintiff leave to file a motion for attorney fees and costs within 30 days of entry of this Order.

**B. Motion to Retax Costs**

1. Rule 68 Applicability

Plaintiff asserts Rule 68 does not apply in this case because at the time Defendants made the Rule 68 offer, Defendants were asserting they would have taken the same action in the absence of the alleged impermissible motivating factor. (Dkt. No. 196 at 2–4.) Plaintiff bases this argument on 42 U.S.C. § 2000e-5(g)(2)(B), which applies in instances where a plaintiff proves a violation of 42 U.S.C. § 2000e-2(m) *and* a defendant "demonstrates" they would have taken the same action despite the impermissible motive. *See* 42 U.S.C. § 2000e-5(g)(2)(B). In other words, as the Court understands it, if Defendants had been successful in demonstrating their mixed-motive defense, then the Rule 68 offer would have been invalid because attorney fees are distinct from costs under 42 U.S.C. § 2000e-5(g)(2)(B) and cannot be included as part of

a Rule 68 offer. Thus, as the argument goes, because Defendants did not abandon their mixed-motive defense until shortly before trial, "Plaintiff would not know whether FRCP 68 applied to this case" (Dkt. No. 196 at 4) and could not meaningfully evaluate the terms of the Rule 68 offer, i.e., whether it was valid as to attorney fees or not at the time the offer was transmitted.

The problem with Plaintiff's position on this issue is that there was never a certainty that Defendants would in fact succeed on (or "demonstrate") their mixed-motive defense at trial. Plaintiff always knew there was the potential that Defendants would be unsuccessful in establishing this defense, which means there was risk that the Rule 68 offer properly included attorney fees. Put another way, Plaintiff would have been aware at the time the offer was submitted that if Defendants were successful in advancing their mixed-motive defense, the Rule 68 offer would be deemed to have improperly included attorney fees. At the same time, Plaintiff also would have been aware that if Defendants were unsuccessful in advancing their mixed-motive defense at trial, there would be no basis to argue the Rule 68 offer improperly included attorney fees. Plaintiff had the ability to evaluate this risk at the time the Rule 68 offer was made.

Accordingly, there is no basis to conclude the Rule 68 offer was invalid at the time it was submitted or that it should not apply to attorney fees.

2. <u>Outcome versus Unaccepted Offer</u>

Where a plaintiff chooses not to accept a Rule 68 offer of judgment, and if the "judgment that the [plaintiff] finally obtains is not more favorable than the unaccepted offer, the [plaintiff] must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). By its terms, Rule 68 requires a court to compare the final judgment with the unaccepted offer. *Id*. "[T]he non-monetary elements of a judgment should be considered when comparing it to a Rule 68

offer." *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 944 (11th Cir. 2020) (citing *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 231 (2d Cir. 2006); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 837–38 (6th Cir. 2005)). An award of equitable relief in employment cases is considered when comparing favorability under Rule 68 and such relief "is not incidental to monetary relief." *Reiter*, 457 F.3d at 230.

Here, the offer of judgment was against both Defendants for $75,000 plus costs and reasonable attorney fees. (Dkt. No. 184 at 4.) Once the rulings in this Order are taken into account, Plaintiff will have finally obtained a judgment against Defendant City for retaliation, $10,912.40 in monetary damages, and equitable relief in the form of an additional three months of retroactive seniority to January 22, 2019.

Plaintiff asserts that a verdict finding liability for unlawful retaliation is of value to Plaintiff such that it should be factored into evaluating whether the judgment finally obtained is greater than the Rule 68 offer. (Dkt. No. 209 at 4) (the judgment obtained is not "less valuable to Plaintiff than the value of having a verdict on the merits and both compensatory and equitable relief"). She contends the "judgment establishing retaliation . . . will provide Plaintiff protection from future discrimination and retaliation[] and will deter Defendants and its employees from discriminating or retaliating against Plaintiff in the future." (Dkt. No. 196 at 7.) She argues this "added protection" will have significantly more value over the next ten years of her career than $64,000. (*Id.*) She further contends that both parties placed a high premium on liability, per the settlement negotiations. (*Id.* at 8.)

The Court declines to take the view that the verdict of liability has value separate and apart from the relief provided by the judgment itself. The Court may not assess the ancillary benefits that stem from the lawsuit, such as the speculative, intangible benefits a verdict of

retaliation might afford Plaintiff like vindication or protection. *See Spencer v. General Elec. Co.*, 894 F.2d 651, 663 (4th Cir. 1990) (finding it was error to "include non-judgment relief . . . acquired as part of" the judgment finally obtained).

Even if the verdict of liability was included as part of the judgment for the purposes of comparing outcomes under Rule 68, the Court does not find the verdict of liability increased the value of the judgment finally obtained by any appreciable amount under the circumstances presented. This is because Defendants offered to have a judgment entered against *both* Defendants. (Dkt. No. 184 at 4) ("Defendants City of Vancouver and James McElvain offer to allow judgment to be taken against them[.]"). By contrast, the judgment finally obtained includes only a judgment against Defendant City. (Dkt. No. 179 at 1.) Even though the jury verdict declared specific liability against one defendant, a judgment entered against both defendants that did not include a specific admission of liability still would have provided Plaintiff with vindication and shown the public she was justified in filing her claims—possibly even more so because both Defendants were willing to acknowledge Plaintiff was entitled to a judgment against them. As it stands now, Defendant McElvain was deemed to have not violated any law and otherwise completely prevailed against Plaintiff. Defendant McElvain clearly did better than the offer of judgment he jointly submitted with Defendant City to Plaintiff. And Defendant City, by defeating the discrimination claim, likewise prevailed against Plaintiff on one claim and so is on equal footing with Plaintiff in that she prevailed only on the retaliation claim. The Court cannot find the verdict of liability for retaliation against Defendant City outweighs the proffered judgment against both parties, even absent a specific admission of liability.

The Court then turns to the remaining elements of the judgment: the monetary damages and equitable relief. Defendants offered Plaintiff $75,000 and Plaintiff—after entry of this

Order—will have obtained roughly $11,000. The issue, therefore, is whether the equitable relief granted is valued greater than the approximately $64,000 difference between the damages offered and those finally obtained.

Plaintiff argues there are substantive benefits of retroactive seniority because "in the event that current Lieutenant Ruder voluntarily or involuntarily returned to a Sergeant position—something that has occurred in the past—Plaintiff would have seniority over Ruder." (*Id.*) In addition, "[i]n competition for promotions to higher ranking positions at VPD or at other agencies, Plaintiff would also be entitled to credit for more experience as a Sergeant than prior to trial." (*Id.*)

It appears the additional three months of seniority would not entitle to Plaintiff to any substantial increase, if any, in economic benefits (other than those already awarded). It also is speculative as to whether three months of seniority might ever place her in a better position relative to Lieutenant Ruder because it is uncertain whether Lieutenant Ruder will ever be demoted. The Court, therefore, concludes the benefits of three months seniority are of minor import in evaluating Defendants' Rule 68 offer.

Given the Court declines to weigh the relief stemming from a retaliation verdict separately from the judgment received when comparing it to the Rule 68 offer of judgment, and given the Court's finding the equitable relief Plaintiff received was not more favorable than the $64,000 difference in monetary damages, the Court concludes the judgment Plaintiff finally obtained is not more favorable than the unaccepted Rule 68 offer of judgment.

3. Costs

"A plaintiff that rejects a Rule 68 offer in excess of the judgment ultimately obtained at trial must bear its own and the defendant's post-offer costs." *Champion Produce, Inc. v. Ruby*

*Robinson Co., Inc.*, 342 F.3d 1016, 1026 (9th Cir. 2003). "The award is mandatory; Rule 68 leave no room for the court's discretion." *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 859 (9th Cir. 1996).

    Having found that Plaintiff did not obtain a judgment more favorable than the Rule 68 offer, there is no basis to deny Defendants' post-offer costs.

    The Court also has reviewed the Order on the Motion for Bill of Costs (Dkt. No. 195) and does not find any basis to modify the amounts awarded therein.

## IV. CONCLUSION

For the reasons stated herein, the Court GRANTS the motion to amend judgment (Dkt. No. 181) and DENIES the motion to retax costs. The Court hereby ORDERS:

1. The judgment be amended to include $5,456.20 in economic damages;
2. Defendants provide Plaintiff retroactive seniority effective January 22, 2019;
3. Defendants match 1% of Plaintiff's contributions to the deferred compensation account;
4. Defendants contribute the number for the relevant period as required by the Department of Retirement Systems regarding employee retirement as of the date wages should have been paid;
5. Defendants pay pre-judgment interest in accordance with the final judgment amount using the federal calculation discussed above;
6. Plaintiff may file a motion for attorney fees within 30 days of entry of this Order; and
7. Plaintiff SHALL pay Defendants' costs as identified in the Order on the Motion for Bill of Costs (Dkt. No. 195).

Dated this 23rd day of April 2024.

David G. Estudillo
United States District Judge