1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JULIE BALLOU,

               Plaintiff,

     v.

JAMES MCELVAIN,

              Defendant.

CASE NO. 3:19-cv-05002-DGE

ORDER ON MOTION FOR
ATTORNEY FEES (DKT. NO. 215)

## I.     INTRODUCTION

Before the Court is Plaintiffs' motion for attorney fees.  (Dkt. No. 215.)  Upon review of that motion, the Defendants' response (Dkt. No. 231), Plaintiff's reply (Dkt. No. 232), and the remaining record, the Court GRANTS in part and DENIES in part the motion.

## II.     BACKGROUND

The Court presumes familiarity with the facts in this case.  (*See* Dkt. Nos. 67, 113.)  Following a trial on the merits, the jury issued a verdict finding Defendant City of Vancouver liable for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the

Washington Law Against Discrimination ("WLAD") because Plaintiff opposed sex discrimination.  (Dkt. No. 178 at 2.)  The jury found in favor of Defendant City on Plaintiff's sex discrimination claims under Title VII and the WLAD and found for Defendant James McElvain on all claims.  (Dkt. No. 178 at 1–2.)

On April 23, 2024, this Court amended the judgment and instructed Plaintiff to file a motion for attorney fees.  (Dkt. No. 210 at 13.)  In her motion, Plaintiff maintains she is a prevailing party, asserts attorney fees totaling $1,321,392, including a lodestar adjustment multiplier of two, and seeks reimbursement for additional costs totaling $4,163.50.  (Dkt. No. 215.)

### III.   DISCUSSION

#### A.  Legal standard

The lodestar method is "the default principle for fee calculation in Washington."  *See Brand v. Dep't of Labor & Indus*., 989 P.2d 1111, 1119 (Wash. 1999).  Washington law presumes that a properly calculated lodestar figure represents reasonable compensation for counsel.  *Henningsen v. Worldcom, Inc*., 9 P.3d 948, 959 (Wash. Ct. App. 2000).

The lodestar method multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).  After calculating this, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure based on twelve factors.  *Id*. at 252 n.4; *see Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975) *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992), (describing the twelve factors).

#### B.  Prevailing party and division of claims

Defendants argue where a plaintiff only partially succeeds, she is only entitled to attorney

1   fees resulting from work on the successful claims and cannot recover fees for unsuccessful

2   claims if they are unrelated.  (Dkt. No. 231 at 5–6.)

3          In such instances where a Plaintiff is successful on only some of her claims, the court

4   applies a two-part analysis to determine what attorney fees are recoverable.  First, the court asks

5   whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's

6   successful claims; if unrelated, the final fee award may not include time expended on the

7   unsuccessful claims.  *Hensley v. Eckerhart*, 461 U.S. 424, 434–435 (1983).  If the unsuccessful

8   and successful claims are related, then the court must apply the second part of the analysis, in

9   which the court evaluates the "significance of the overall relief obtained by the plaintiff in

10  relation to the hours reasonably expended on the litigation."  *Id.* at 435.

11         The test for relatedness of claims is not precise.  *Id.* at 436.  However, related claims will

12  involve "a common core of facts" or will be based on related legal theories, *id.* at 435, while

13  unrelated claims will be "distinctly different," and based on different facts and legal theories, *id.*

14  at 434.  "The test is whether relief sought on the unsuccessful claim 'is intended to remedy a

15  course of conduct entirely distinct and separate from the course of conduct that gave rise to the

16  injury on which the relief granted is premised.'"  *Thorne v. City of El Segundo*, 802 F.2d 1131,

17  1141 (9th Cir. 1986) (quoting *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir.

18  1983)).

19         Defendants argue the claims here are severable because Ballou presented four separate

20  adverse actions, including the IA investigations, July 2018 promotion, October 2018 promotion,

21  and January 2019 promotion; Defendants also point out these were presented through five

22  different theories of liability including § 1983 equal protection, § 1983 petition clause, disparate

23  treatment, hostile work environment, and retaliation.  (Dkt. No. 231 at 6–7.)  Defendants argue

24

1  these required different elements, which were likewise presented against different defendants,

2  making them "distinctly different" from her lone successful claim.  (*Id.* at 7.)

3        Although the test for relatedness is not precise, the Court is confident it does not work in

4  the way Defendants assert.  Whether an unsuccessful claim is related to a successful claim

5  cannot be broken down categorically by individual events or sources of law providing causes of

6  action.  The Ninth Circuit found in *Odima v. Westin Tuscon Hotel* that a hotel employee's

7  unsuccessful state tort claims were related to his successful Title VII and § 1981 claims.  53 F.3d

8  1484, 1499 (9th Cir. 1995).  The claims were sufficiently related because "all of Odima's claims

9  arose from a common core of facts—his employment relationship with Westin." *Id.*  To prove

10  the federal claims, "Odima had to present evidence of his work environment, his relationship

11  with his superiors, his interactions with the Human Resources staff, his efforts to advance and

12  the impact of Westin's discriminatory practices." *Id.*  "Odima's state tort claims for retaliation,

13  constructive discharge, and wrongful termination required virtually the same evidence." *Id.*

14        The same is true here. Plaintiff's § 1983 claims, disparate treatment claim, hostile work

15  environment claim, and retaliation claim all shared a common core of facts—Ballou's

16  employment relationship with VPD.  For each of her claims, Ballou had to present evidence of

17  her work environment, relationships with her superiors, interactions with Human Resources, her

18  efforts to be promoted, and the impact of VPD's discriminatory practices.  Nor are the different

19  instances of discrimination taking place on different days prohibitive of finding commonality

20  between Ballou's claims.  Almost every discrimination case requires evaluation of an evolving

21  (and often deteriorating) relationship between the Plaintiff and Defendant that will necessarily

22  unfold over a period of time rather than a single day.  The fact that Ballou asserted she was being

23  treated unfairly in multiple instances—in the IA investigations and multiple "pass-overs" for

24

1   promotions—does not impact the relatedness analysis.  To do so would inappropriately subject

2   the parties to "a second major litigation."  *Hensley*, 461 U.S. at 437.

3          Finding the unsuccessful and successful claims are related, the Court must now apply the

4   second part of the analysis, in which it evaluates the "significance of the overall relief obtained

5   by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435.  If the

6   plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial

7   or limited success" was obtained, full compensation may be excessive.  *Thorne*, 802 F.2d at 1141

8   (quoting *Hensley*, 461 U.S. at 435–437).  Such decisions are within the district court's discretion.

9   *Id.*

10          The fact that Ballou was successful on only one claim out of six "figures into the

11   calculation" of attorney fees.  *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009).

12   In judging the level of success and the reasonableness of hours spent achieving that success, a

13   district court should "'give primary consideration to the amount of damages awarded as

14   compared to the amount sought.'"  *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) and

15   *Riverside v. Rivera*, 477 U.S. 561, 576 (1986)).  But the Court "must consider the excellence of

16   the overall result, not merely the amount of damages won."  *Id.* at 1104.

17          Plaintiff notes she obtained a jury finding that she was retaliated against in the denial of a

18   promotion to Sergeant, economic damages of  $5,456.20 (which was approximately 1/3 of the

19   maximum economic damages that could have been awarded), non-economic damages of

20   $5,456.20, prejudgment interest, employer contributions to retirement, employer match to

21   Plaintiff's deferred compensation account and seniority in the Sergeant position retroactive to

22   January 22, 2019.  (Dkt. No. 215 at 9.)  She maintains her lawsuit brought about other intangible

23   benefits, like voluntary changes in Defendants' conduct toward women in the workplace.  (*Id.*)

24

1    In conducting the lodestar analysis and assessing the reasonableness of Plaintiff's

2    claimed fees, the Court will keep in mind the significance of Plaintiff's relief obtained in relation

3    to the hours reasonable expended on the litigation.

4    **C.  Lodestar Analysis**

5         1.  <u>Reasonableness of Fees</u>

6         "To inform and assist the court in the exercise of its discretion, the burden is on the fee

7    applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the

8    requested rates are in line with those prevailing in the community for similar services by lawyers

9    of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 866, 895

10   n.11 (1984).

11        In determining hourly rates, the Court must look to the "prevailing market rates in the

12   relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003).  "Affidavits

13   of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and

14   rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are

15   satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps*

16   *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The court may also rely on its own knowledge

17   and experience in determining what rates are reasonable.  *See Salyer v. Hotels.com GP, LLC*,

18   Case No. C13-1966-RSL, 2015 WL 3893079, at *2 (W.D. Wash. June 23, 2015) (citing *Ingram*

19   *v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

20        In support of her motion, Plaintiff submitted declarations from attorneys Matthew Ellis

21   and Stephen Brischetto, both of whom were attorneys of record in this case.  (Dkt. Nos. 216,

22   221.)  Ellis has been licensed to practice law since 2007 and operates a solo law firm with his

23   primary area of practice representing plaintiffs in employment discrimination cases.  (Dkt. No.

24

ORDER ON MOTION FOR ATTORNEY FEES (DKT. NO. 215) - 6

216 at 1–2.)  Ellis' claimed hourly rate is $575 for both hourly and contingency cases.  (*Id.* at 3.)

Brischetto was admitted to practice in Indiana in 1977, Oregon in 1978, and Washington in 2002.  (Dkt. No. 221 at 1–2.)  He is a solo practitioner in Portland, Oregon focusing on complex litigation in civil rights and employment law.  (*Id.* at 1.)  He has tried more than 50 employment cases and his hourly rate is $685 per hour.  (*Id.* at 6.)

Plaintiff also submitted declarations from Colin McHugh, Scott Hunt, and Michael Seidl in support of Ellis and Brischetto's rates.  McHugh has been practicing law since 2014 and was a founding member and part owner of the law firm MRM Law Group, PLLC, in Vancouver, Washington.  (Dkt. No. 217 at 1–2.)  McHugh is now the sole member of McHugh Law, PLLC, exclusively representing plaintiffs in employment and personal injury matters.  (*Id.* at 2.)  McHugh's firm charges $350.00 per hour for general litigation, which he attests is at or below the market rate for an attorney with his training or experience.  He has similarly been awarded at least $300-$350.00 per hour in various employment cases, some of which he attached for this Court's review.  (*Id.* at 4.)  McHugh maintains Ellis, who has been practicing law six years longer than McHugh, has the experience and expertise to charge a reasonable rate of $575.00 per hour, which is at or below the market rate for a plaintiff-side employment attorney in Vancouver, the Portland metropolitan area, and Washington at large.  (*Id.* at 5–7.)

Hunt has practiced law since 1992 and has represented plaintiffs in employment law disputes for more than 31 years.  (Dkt. No. 218 at 1.)  As a litigator at the law firm Busse & Hunt, LLC, he has been awarded various accolades for his work in all aspects of employment law, including discrimination, retaliation, and wrongful discharge.  (*Id.* at 2.)  Hunt has known Brischetto for over 25 years, and is personally familiar with his skill, acumen, and reputation.  (*Id.* at 4.)  He likewise has known Ellis for over ten years, who he considers to be an excellent

1    plaintiff's lawyer and to whom Hunt consistently refers potential clients.  (*Id.* at 4–5.)  Hunt

2    agrees the rate of $575 for Ellis and $685 for Brischetto are both well within the range of

3    commonly charged rates.  (*Id.* at 5.)

4            Seidl, a trial lawyer in Portland, has been practicing for over 41 years, with a substantial

5    portion of the past 15 years of practicing focusing on employment litigation, mostly on the

6    plaintiff/employee side.  (Dkt. No. 219 at 1.)  In Seidl's opinion, Brischetto is "among the best

7    plaintiff-side employment lawyers in Oregon[,]" and "entitled to the highest prevailing market

8    rate for lawyers with his years of experience."  (*Id.* at 2.)  He believes Brischetto's rate is

9    reasonable and fully justified.  (*Id.*)

10           Defendants contend the rates requested by Plaintiffs' attorneys are unreasonably

11   high.  (Dkt. No. 231 at 14–15.)  Defendants point out Ellis' requested rate has increased

12   significantly since 2017, when he claimed and was awarded $315/hour in *VanValkenburg v.*

13   *Oregon Dep't of Corr.*, No. 3:14-CV-00916-MO, 2017 WL 2495496, at *5 (D. Or. June 9,

14   2017).  (Dkt. No. 231 at 14.)  Defendants also emphasize Brischetto's declaration identifies his

15   most recent awarded hourly rate was $450.[1]  (Dkts. No. 231 at 14–15; 221 at 5.)

16           It is not surprising Ellis and Brischetto's rates have increased in the past seven years.

17   However, the Court must take into account the degree of success Plaintiff obtained.  The Court

18   accepts the statements of attorneys McHugh, Hunt, and Seidl that the rates sought by Ellis and

19   Brischetto are within the range of those charged by attorneys of comparable skill, experience and

20   reputation in western Washington.  But the Court may also rely on its own knowledge and

21

22   [1] Plaintiff points out Defendants argument "overlooks the multiplier of 1.5 added to those rates at
     that time, too, resulting in an effective rate of $675 per hour."  (Dkt. No. 232 at 8.)  But

23   Brischetto's argument applies the multiplier twice; he asks for a 2x multiplier in the overall
     award on top of the $675 rate.  The Court compares the un-multiplied rates, which are $450 six

24   years ago and $685 now.

experience in determining what rates are reasonable in the community.  The claimed rates are at the high end of the market for employment attorneys in western Washington, and, even considering the other tangible and intangible benefits she received as a result of this lawsuit, Ballou's success compared to the fees sought does not appear to warrant those rates.  As a result, the Court reduces Ellis' fee to $425/hr and Brischetto's fee to $550/hr.

These rates are reasonable in light of rates approved by this Court when considering comparable Washington attorneys.  *See e.g.*, *Peña v. Clark County*, No. 3:21-cv-05411-DGE, Dkt. No. 224 at 4 (W.D. Wash. Dec. 1, 2023) (finding $555 for lead counsel reasonable in employment discrimination case); *Berg v. Bethel School District*, Case No. 3:18-cv 05345-BHS, Dkt. No. 199 at 4–6 (W.D. Wash. May 19, 2022) (considering rates for several western Washington attorneys and finding reasonable rates of between $350.00 per hour for junior associates and $600.00 per hour for senior partners); *Thomas et al. v. Cannon, et al*., Case No. 3:15-cv-05346-BJR, Dkt. No. 374 at (W.D. Wash. Mar. 28. 2018) (approving attorney fees of $600.00 per hour for a senior partner and $275.00 for attorneys with three years' experience).

2.  <u>Reasonableness of Hours Worked</u>

When submitting a motion for attorney fees, a prevailing party may submit records containing entries for hours that are "excessive, redundant, or otherwise unnecessary."  *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434).  A district court may exclude such hours from an attorney fees motion using one of two methods.  The court may either: (1) conduct an "hour-by hour analysis of the fee request" and exclude unreasonable hours; or (2) "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application."  *Gonzalez v. City of*

1    *Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal citations omitted).

2          The determination of fees "should not result in a second major litigation" and trial courts

3    "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S.

4    826, 838 (2011).  The essential goal in shifting fees "is to do rough justice, not to achieve

5    auditing perfection." *Id*.  Trial courts "may take into account their overall sense of a suit, and

6    may use estimates in calculating and allocating an attorney's time." *Id*.

7          There is no precise rule or formula for making these determinations. *Id*. at 436–437.  The

8    district court may attempt to identify specific hours that should be eliminated, or it may simply

9    reduce the award to account for the limited success. *Id*.  However, in determining an appropriate

10   attorney's fee, the "result is what matters" and the most critical factor is "the degree of success

11   obtained." *Id*. at 435–436.

12         Plaintiff asserts Ellis spent 630.7 hours on the case, and Brischetto spent 435.10.  (Dkt.

13   No. 215 at 7.)  Defendants argue because Plaintiff challenged four employment actions and won

14   only one, a 75% reduction in hours is appropriate.  (*Id*. at 14.)  This Court disagrees. As stated

15   above, the Court will not divide Plaintiff's counsel's efforts given that Ballou's successful and

16   unsuccessful claims were sufficiently related.  Additionally, this case was filed on January 3,

17   2019, and involved five years of litigation, including a failed appeal to the Ninth Circuit by

18   Defendants.  (Dkt. Nos. 1, 73, 90.)  Plaintiff not only had to build her factually complex case, but

19   simultaneously handle an interlocutory appeal.

20         Both attorneys subtracted the time incurred after Defendants' Offer of Judgement, and

21   agreed not to charge for the work done by Brischetto's associate (although minimal).  (Dkt. Nos.

22   216 at 3; 221 at 5.)  Where both Brischetto and Ellis were present at deposition, they charged

23   only for the presence of the attorney taking the deposition.  (Dkt. No. 216 at 7.)  They did not bill

24

1  to prepare Plaintiff for her deposition.  (*Id.*)  The Court reviewed Ellis and Brischetto's billed

2  time and finds it to be generally reasonable.  (Dkt. No. 216-1; 221-2.)  However, the Court will

3  reduce the number of hours by 10% given the excessive and duplicative hours billed for both

4  Ellis and Brischetto's work responding to the two motions for summary judgment, which totaled

5  nearly 200 hours.[2]  (Dkt. Nos. 216-1 at 6–7; 221-2 at 7–8.)

6       Reducing Ellis' claimed 630.7 hours by 10% results in 567.6 hours.  Reducing

7  Brischetto's claimed 435.1 hours by 10% results in 395.59 hours.  Ellis' 567.6 hours multiplied

8  by his $425 rate yields **$241,242.75**.  Brischetto's 395.59 hours multiplied by his $550 rate

9  yields **$217,574.50**.

10       3.  Multiplier Analysis

11       Plaintiff asks the Court to adjust the lodestar figure by doubling it.  (Dkt. No. 215 at 13.)

12  Plaintiff argues this case was especially risky because it was a difficult, factually complex case

13  with small damages.  (*Id.* at 14.)

14       Federal courts apply attorney fee multipliers based on state law.  *Mangold v. California*

15  *Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1996).  Under Washington law, adjustments to

16  the lodestar are considered "under two broad categories: the contingent nature of success, and the

17  quality of work performed."  *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 204 (Wash.

18  1983).  In adjusting the lodestar to account for the risk factor, the trial court must assess the

19

20  [2] Plaintiff also explains her attorneys' time and labor is reasonable given the 200,000 pages of

21  documents produced by Defendants.  (Dkt. No. 215 at 7–8.)  Defendants argue the
   overproduction was in response to Plaintiff's "overbroad requests," to which Defendants chose
   to produce a high number of documents "in lieu of being oppositional with the scope of

22  [Plaintiff's] search terms."  (Dkt. Nos. 231 at 13–14; 230-6 at 1.)  Regardless of Defendants'
   strategy, without a record of the disputed discovery issues, this Court is without a sufficient basis

23  to accept Defendant's position that the discovery requests were overbroad.  It is also possible the
   "overly broad" requests still led to the discovery of important, admissible evidence; therefore,

24  expending those hours could be reasonable.

1    likelihood of success at the outset of the litigation. *Id.*

2         "The contingency adjustment is based on the notion that attorneys generally will not take

3    high risk contingency cases, for which they risk no recovery at all for their services, unless they

4    can receive a premium for taking that risk." *Chuong Van Pham v. City of Seattle, Seattle City*

5    *Light*, 151 P.3d 976, 983 (Wash. 2007).  The possibility of attorneys investing significant time

6    and effort in a civil rights-based contingency fee case, only to recover nothing, is far from

7    theoretical. *See e.g., Nelson v. Thurston County et al*., Case No. 3:18-cv-05184-DGE,  Dkt. No.

8    379 (W.D. Wash. 2023).

9         The Court finds Plaintiff's request to double the lodestar does not properly reflect the

10   likelihood of success at the outset weighed against Ballou's limited success at trial.  Instead, the

11   Court finds a 33% increase is an appropriate adjustment for the risk incurred by counsel in taking

12   on this case.  This adjustment considers the time and labor required for counsel to prepare a

13   factually complex case, the difficulty of the questions involved, the skill requisite to prepare this

14   case, the preclusion of other employment by the attorneys due to acceptance of the case, the

15   contingent nature of the case, the amount of damages claimed and the results obtained, the

16   experience, reputation, and ability of the attorneys, the alleged 'undesirability' of the case as

17   explained by Ballou (*see* Dkt. No. 220 at 1–2), the nature and length of the professional

18   relationship with the client, and awards in similar cases.  *Kerr*, 526 F.2d at 70.

19        Although Plaintiff was successful on at least one claim, the jury returned what was

20   largely a defense verdict.  However, the claim involved matters of public importance because

21   Plaintiff established, at least in one instance, discriminatory retaliation taking place at a publicly

22   funded and public-facing agency.  Despite Ballou's minimal award, her lawsuit shed light on

23   unlawful practices and has benefitted the public.  Attorneys must be willing to take on these

24

types of cases, even when recovery may be minimal, because of the importance of ensuring our

local agencies are operating properly and within the bounds of the law.  The Court finds this

figure is adequate to account for the risk taken by Plaintiff's counsel, provides an incentive for

other attorneys to take on civil rights cases, and avoids a windfall.  *Moreno v. City of*

*Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Allison v. Housing Auth. of City of Seattle*,

821 P.2d 34, 37 (Wash. 1991).

      Increasing Ellis' $241,242.75 award by 33% yields **$321,657.10.**  Increasing Brischetto's

$217,574.50 award by 33% yields **$290,099.33.**  Adding the two figures together results in a

total fee award of **$611,756.43**.

      **D.  Costs**

      Under § 1988, the prevailing party "may recover as part of the award of attorney's fees

those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v.*

*Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d

1205, 1216 n.7 (9th Cir. 1986), *opinion amended* 808 F.2d 1373 (9th Cir. 1987)).  Such out-of-

pocket expenses are recoverable when reasonable.  *See id.* at 20; *United Steelworkers*, 896 F.2d

at 407.

      Brischetto incurred $2,378.75 for the forensic evaluation of Plaintiff's cell phone and

personal computer.  (Dkt. No. 221 at 12.)  He also requests $1,158.76 in reimbursement

associated with lodging and travel to the deposition of Michael Bolasina in Seattle and the

settlement conference in Tacoma.  (*Id.*)  His requested costs thus total $3,537.51.

      Ellis incurred $625.99 in out-of-pocket costs, with a substantial portion from his hotel

stay during the settlement conference and travel and parking for depositions.  (Dkt. No. 216-2 at

1–2.)  He also included the cost of printing appeal briefs.  (*Id.*)

Defendants appear to argue certain depositions (like Bolasina's) added nothing to Plaintiff's case for her lone successful claim.  (Dkt. No. 231 at 15).  As explained above, this Court will not entertain Defendants' request to prune the costs down to only those directly associated with the retaliation claim (if such an analysis could even be done).  Plaintiff is not asking the Court to "award her deposition costs already requested in her cost bill" as Defendants claim.  (Dkt. No. 231 at 15.)  The bill of costs requests reimbursement for the transcription of Bolasina's deposition while this motion deals with the out-of-pocket expenses Brischetto incurred in attending the deposition.  (*See* Dkt. No. 211-4 at 16.)

Defendants identify no other fault in Plaintiff's counsel's accounting of their out-of-pocket expenses.  Upon review, the Court finds them to be reasonable fees that would normally be charged to a fee-paying client.  Thus, the Court awards **$3,537.51** in out-of-pocket expenses to Brischetto and **$625.99** in out-of-pocket costs to Ellis.  Together, this totals **$4,163.50** in costs.

## IV.    CONCLUSION

Accordingly, and having considered Plaintiff's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Plaintiff's motion for attorney fees (Dkt. No. 215) is GRANTED in part and DENIED in part.  Plaintiff's total attorney fee award shall be **$611,756.43**. Plaintiff's total recoverable out-of-pocket expenses and costs shall be **$4,163.50.**

DATED this 1st day of July 2024.

David G. Estudillo
United States District Judge